Matter of Murphy.

---

## SUPREME COURT — Same Term.

---

## SUPREME COURT.

### In the Matter of the Application of Thomas Murphy for a Mandamus.

*Comptroller of State — his duties under the acts of 1873 and 1879, as to bill for services of appraiser, appointed by superintendent of insurance department, which bill has been approved by said superintendent.*

The relator, an appraiser duly appointed by the superintendent of the insurance department, having presented an itemized bill for services as such appraiser, which bill was approved by said superintendent, the duties of the comptroller of the state, under the acts of 1873 and 1879, requiring him then to audit such bill were confined to an examination for the purpose of seeing whether the preliminary steps required by law had all been taken; and he had no power arbitrarily, and on his own sense of right and justice, either to increase, decrease or reject the bill altogether, because the charges as made did not meet his approval.

*Albany Special Term,* 1880.

APPLICATION for a *mandamus* against the comptroller of the state of New York to compel him to audit a bill as approved by the superintendent of insurance.

*Edward Newcomb*, for Murphy.

*Matthew Hale*, for the comptroller.

WESTBROOK, *J.* — On the sixteenth day of October, 1877, Thomas Murphy was appointed by John F. Smyth, the then superintendent of the insurance department, under the provisions of chapter 593 of the Laws of 1873, an appraiser of the real estate covered by mortgages owned by The Manhattan Life Insurance Company of New York, situate in the counties of New York, Kings, Richmond and Suffolk. Mr. Murphy accepted the appointment, discharged its duties, and then presented an itemized, detailed and full bill to the superintendent of insurance, who approved the same. Such itemized and approved bill was then presented, on March 17, 1879, to the comptroller of the state, Frederic P. Olcott, for audit, who reduced the bill from $9,800, at which it had been approved by the superintendent of insurance, to $720, and refused to audit the same as approved.

Mr. Murphy declined to accept the bill as audited by the comptroller and re-presented the bill, itemized and approved by the superintendent of insurance, to the present comptroller, James W. Wadsworth, who has also refused to audit the bill as approved. Mr. Murphy now asks for a *mandamus* to compel him to perform that alleged duty.

There are no allegations of fact which are contested or disputed. The application turns entirely upon the powers of the comptroller under the statute, and its language must be clearly in mind previous to any dicussion.

Chapter 593 of the Laws of 1873, section 2, provides : " All charges for making examinations of any insurance company, and all charges against any company by any attorney

or *appraiser* of this department shall be presented in the form of an itemized bill, which shall *first be approved* by the said superintendent and *then audited* by the comptroller, and shall be paid on his warrant," &c.

The act of 1879 (*chap.* 161, *sec.* 2) has made no change in this particular. That reads, " The expense of any examination made under this section shall be borne by the company whose affairs are so examined, to be paid by the company to the state treasurer, after being *approved* by the superintendent of the insurance department and *audited* by the comptroller."

It will be observed that the law requires the following steps to be taken : 1st. An appointment by the superintendent of the insurance department. 2d. The performance of the services by the appointee. 3d. The presentation of " an itemized bill " for all charges for services rendered under the appointment. 4th. That the " itemized bill  *  *  *  shall *first be approved* by the said superintendent " ; and 5th. " *Then audited* by the comptroller."

The question is not, what may sometimes be involved in the use of the words " audit," " audited " or " auditor, " but it is, in what sense is the word *"audited"* used in this statute ?

The word, in its primary sense, implies a hearing. If an account is referred to an officer for audit, and no provision is made in the reference for the ascertainment of its justice prior to its examination by the auditor, then, of course, it is such officer's duty to give the matter a full hearing or examination, and decide every question upon its merits. If, however,. a tribunal is created for the examination of the bill, and for its rejection or approval prior to its audit by the officer to whom it is referred, then the hearing or examination by such officer is not upon the whole merits of the bill, but it must be limited and confined to an inquiry whether the previous steps required by law have all been duly and regularly taken.

In the case now presented, the officer making the appointment — the superintendent of insurance — was required to

examine an "itemized bill" for the services rendered, which, before its presentation to the comptroller, had to be "first approved by the said superintendent." This was a reasonable requirement of the law, for that officer is presumed to be acquainted with the nature and value of the services rendered. After such approval by the superintendent it is declared, that it must be "then audited" by the comptroller. What does this require of the last named officer? To go over each item of the bill, and raise or reduce it according to his ideas of the propriety of the charge and its value? If he may go over the items of the bill in such a manner, why may he not then also go further and inquire whether the appointment of the appraiser should ever have been made and the services rendered at all, and if in his judgment there should have been no examination of the affairs of the company, reject the bill altogether? Certainly, if the comptroller, because he is authorized to audit the bill, is empowered to examine into the justice of the charges, then he may also determine the whole claim to be unjust and wrong, even though the services were rendered in obedience to law, upon the regular appointment of an officer authorized to make it. No such construction of the act is, in my judgment, admissible. As a mode of ascertaining and fixing the amount of the charges before the bill was presented to the comptroller for audit, was provided by the statute, the latter's duties in the auditing thereof were confined to an examination for the purpose of seeing whether the preliminary steps had all been taken, and he had no power, arbitrarily and on his own sense of right and justice, either to increase, decrease or reject the bill altogether, because the charges as made, though "itemized" and "approved" as the law directed, did not meet his approval. It would be just as proper for an auditing officer to refuse to allow a judgment recovered in due course of law, because, in his opinion, it ought never to have been rendered.

The view just presented is not novel, but has been frequently adopted when the auditing tribunal was required to

act upon a claim previously ascertained in a mode prescribed by law.

*The People ex rel. Hoyt* agt. *The Supervisors of the County of Kings* (16 *Wend.*, 520), decided by the court of errors, is directly in point. By section 53 of chapter 55 of Laws of 1830, entitled " An act regulating highways and bridges in the counties of Suffolk, Queens and Kings," it was provided, when a road had been laid out by the commissioners of highways, that " such commissioners shall cause a statement of the verdict, charges and expenses in laying out the said road, to be delivered to the supervisor of the town, who shall lay the same before the board of supervisors of the county, by whom the same shall be *audited.*" The land of the relator had been taken for a highway and his damages assessed at $1,450. On the presentation to the board of supervisors under the section just quoted, the matter was referred to a committee, which reported that a much less sum should be awarded to Hoyt. The board of supervisors relied upon the *People ex rel. Patchen* agt. *The Supervisors of the County of Kings* (7 *Wend.*, 530), in which case the same meaning given to the word " audit " as that adopted by the comptroller in this, was held to be proper. This view was also sustained by the supreme court, but was reversed by the court of errors, twenty-four members of that tribunal voting therefor, and only one voting to affirm. .

In *Morris* agt. *The People* (3 *Denio*, 382), it was held, " When the board of supervisors of a county are required by law to *audit* and allow the accounts of judicial officers for their salaries, they have no discretion to exercise, but must allow the salary as fixed by law " (*See opinion of Lott, Senator, on pages* 400, 401, 402).

The same view of the meaning of the word we are considering must have been adopted by the court of appeals in *The Amoskeag Manufacturing Company* agt. *The Mayor of Albany*, &c. (63 *N. Y.*, 37). The case, though not fully reported, was as follows : By chapter 197 of Laws of 1867,

entitled "An act to reorganize the fire department of the city of Albany," it was declared (*sec.* 5) : " The chamberlain of the city of Albany shall *audit* and pay the bills contracted or incurred by said board of fire commissioners under the provision of this act, upon production of their warrant therefor," &c. The fire commissioners had contracted for repairs to the amount of $1,687.05, and had passed and approved the amount at that sum. The city chamberlain, supposing the word " audit " to mean what the comptroller on his proceeding claims for it, examined the bill upon its merits, and reduced it $300. The plaintiff refused to accept the audit and brought suit to recover the whole amount. In that action a judgment for the full sum, as fixed by the fire commissioners, was rendered upon the report of a referee, which was affirmed at general term and in the court of appeals. The case filed in the state library discloses the facts stated.

Other decisions of a similar character can doubtless be found, but those cited are sufficient to sustain a proposition clear without them. In fact it seems to me that the learned counsel for the comptroller concedes the whole case, when he says in his brief : " The result of the cases in this state would seem to be, that where the amount of the bill to be audited is fixed by law, *or where the amount is by law to be fixed by some other than the auditing officer as by the jury in the* case in 16th Wendell, or by the board of health as in the case in 9th Wendell, or by fire commissioners as in the case in 63d N. Y., then the auditing officer will not only be required to audit and allow, *but to do so at the amount fixed by law, or by the authority to which the power to fix is delegated by law."* Precisely this is the case presented. The *approval* of the bill is to be by the superintendent, the officer who ordered the services, and not by the officer who was simply to " *audit.*" There was no discretion committed to the comptroller. Of the services he could have no personal knowledge, and he was powerless to investigate. The bill should come to him after investigation and approval in the

mode prescribed by law, and whether it did or not he could decide, but beyond this he could not go.

An order must be made requiring the comptroller to do his duty under the law, in conformity with the principles herein enunciated. That his predecessor has taken the same view of his power that he does, is no justification to him. The obligation to audit rests upon the individual holding the office of comptroller, without regard to the personalty of the incumbent. The failure to take this proceeding against his predecessor is no bar to this application, for if it was, the refusal to perform a plain duty by the possesssor of the offce during the last day of his term would then be a perpetual bar.

If the comptroller desires a stay to enable him to review the order to be made hereunder, it will be granted on the application of his counsel.